EHRLICH, Justice,
dissenting.
There is clearly competent and substantial record support for the Board’s conclusion that this young man currently fails to meet the standards of conduct and fitness required for admission to The Florida Bar. The record supports the Board’s conclusion that VMF willfully attempted to conceal pertinent information concerning the 1975 arrests. VMF was most certainly aware of these arrests and their attendant circumstances. Question 21(a) clearly states: “The following is a complete record of all instances in my entire life in which I have been arrested, given a warning, or taken into custody or accused, formally or informally of the violation of a law for offenses other than traffic violations.” An applicant is “warned that no statute, court order or legal proceeding withholding adjudication, expunging the information required herein from any record, or dismissing, vacating or setting aside any arrests, accusation or conviction, or purporting to authorize any person to deny the existence of such matters shall excuse less than full disclosure.” The information required under item 21(a) could be no plainer. Admittedly, VMF relied on the advice of his attorney father in making his initial decision not to provide the requested information on his bar application. However, even after the Board twice requested amendments to item 21(a), VMF continued to provide far less than a “complete and detailed explanation of the facts” surrounding the ‘75 incident; and he never revealed the second arrest on the Clinton County possession charge.
During the investigative hearing the petitioner continued to downplay the whole incident. The panel members literally had to drag the extent of his involvement in the Ingham County incident out of him bit by-bit.[1] I fail to understand why this Court has concluded that under these circumstances, VMF is a suitable candidate for admission to the bar. He had four distinct opportunities to provide the Board with all the facts surrounding the 1975 arrests. Instead, he willfully chose to withhold pertinent information in a self-serving attempt *1109 to down play the entire incident.[2] I agree with the Board’s conclusion that such conduct is equivalent to perpetrating a fraud on this Court and cannot be condoned. As the majority points out, this Court “expect[s] no less than absolute candor from a bar applicant in his dealings with The Florida Bar.” Clearly we should accept no less.
Petitioner’s willful concealment of information from the Board negates, in my view, the evidence presented by him of his so-called rehabilitation since the 1975 incidents. Proceeding as he claimed, on the advice of his attorney father does not absolve him of responsibility for his failure to present the truth to the Board. The Board is an agency of this Court, charged with responsibility for enforcing the rules promulgated by this Court relating to admission to the Bar. Therefore, I would sustain all the Board’s findings of fact and law which are amply supported by the record, deny the petition for admission and require the petitioner to make a showing of rehabilitation sufficient to warrant reconsideration by this Court as provided for in article III, section (4)(d), Rules of the Supreme Court relating to Admissions to The Bar.

. During the investigative hearing the petitioner first contended that his girlfriend "passed some marijuana" to an undercover police officer and he was "not even aware the incident occurred ... until later.” When asked if he had been using drugs on that evening, the petitioner answered “no.” When asked if anyone present was using hashish, he stated “I don’t know ... I’m not sure what was, what was there at the time." Upon further questioning, he admitted "well, a pipe was passed around." When pressed further, he admitted “a pipe was passed to me ... I smoked some, yes.” When asked whether he retrieved four foil packages at his girlfriend’s request, he admitted that he went to the basement and got the four packages but maintained that they were in a container and that he was unaware of its contents until it was opened. He further maintained that he wasn't involved in the sales transaction and that he was totally unaware that money was changing hands. When asked if he still agreed with the statement made in his second amendment, ‘1 was not involved in the transaction, but since I was in the house at the time, I was later taken into custody," he stated that he did.
At no time diming the investigative hearing did the petitioner inform the Board of his arrest on the Clinton County possession charge.

. The transcript of the proceedings before the Ingham County Court indicate that when asked by the trial judge to recount the circumstances leading up to the Ingham County charges, VMF told the judge that he merely smoked some marijuana that night from a pipe which was being passed around. He never mentioned the fact that a drug transaction occurred or that he was in any way involved.